## Richmond

### S. S. SNARR V. COMMONWEALTH.

#### November 17, 1921.

1. PROHIBITION LAW—*Evidence of Other Crimes—Res Gestae—Case at Bar.*—In a prosecution for unlawfully transporting liquor, accused had been arrested for reckless driving and the liquor in question was found on his person. On the trial the officers who arrested him were allowed to testify as to the events which preceded the finding of the liquor in the overcoat pocket of accused, including the fact that they were about to arrest accused for reckless driving.

   *Held:* That this evidence was properly admissible as part of the *res gestae,* and was not within the rule forbidding testimony relating to other crimes.

2. PROHIBITION LAW—*Evidence of Other Crimes—Cross-Examination in Regard to Other Crimes.*—In a prosecution for violation of the prohibition law by the transportation of liquor, the officers who arrested accused testified that when they found the liquor in question they were about to arrest accused on another charge for reckless driving. To this evidence accused objected. Upon cross-examination, attorneys for the accused inquired into the occurrences which preceded the discovery of the liquor, and accused himself also related his recollection of all the circumstances immediately preceding his arrest.

   *Held:* That by this course accused waived his original objection to the testimony, so that, even if incompetent, it furnished no ground for reversal.

3. PROHIBITION LAW—*Baggage—Liquor Carried on Person.*—The express permission of section 39 of the prohibition act. (Acts 1918, ch. 388) to a traveler to carry as much as one quart of ardent spirits in his baggage is equivalent to an inhibition against carrying it on the person; and intoxicating liquor carried in a pocket of the traveler's clothing which he is at the time wearing is being carried on his person, and not in his baggage.

4. PROHIBITION ACT—*Transportation Not for Sale—Section 3 of Acts 1918 ch. 388.*—Under section 3 of the prohibition act (Acts 1918, ch. 388), forbidding any person "to manufacture, trans-

port, sell, keep, or store for sale" ardent spirits, it is unlawful to transport liquor except in the baggage of accused whether the liquor is for sale or not.

5. INTOXICATING LIQUORS—*Transportation of Liquor—Evidence of Other Offenses—Provision as to Jail Sentence Where Offense is Inadvertent.*—Upon a prosecution for the unlawful transportation of liquor, under the questioning of the court a witness was allowed to testify that he had heard prior to the case on trial that accused had operated his car while under the influence of liquor.

*Held:* That this testimony was inadmissible, both because it was hearsay and irrelevant; and notwithstanding that the evidence of the transportation was clear, its admission was not harmless in view of section 5 of the prohibition act, Acts of 1918, p. 579, providing that the trial court shall instruct the jury not to impose a jail sentence where the violation of the law is unintentional or inadvertent, and of accused's testimony that his violation of the statute was inadvertent.

6. PROHIBITION ACT—*Provisions as to Jail Sentence Where Offense is Inadvertent—Inquiry into Other Offenses.*—By section 5 of the Prohibition Act (Acts 1918, p. 579) the General Assembly apparently intended to provide that where the defense was made that the violation was unintentional and inadvertent, and such defense was not made as a mere subterfuge by an habitual or deliberate violator of the law, and it did not appear from other legitimate evidence introduced upon the trial that there had been other violations of the statute, then there should be no imprisonment. Such other violations might very well incidentally appear from the evidence, but it was not meant that the court could divert attention from the crime charged and investigate other possible offenses in order to determine whether the extreme or the modified punishment should be inflicted.

7. PROHIBITION ACT—*Provision as to Jail Sentence Where Offense is Inadvertent—Inquiry into Other Offenses.*—Where in a prosecution for violating the prohibition act by the transportation of liquor, accused, a man of good character, claimed that his act was unintentional and inadvertent it cannot be assumed in determining whether accused was entitled to the benefit of section 5 of the prohibition act (Acts 1918, p. 579) that he must have been violating the law against drinking on a public highway, because the bottle containing the ardent spirits was partly emptied, and because his intoxication was apparent, when arrested on the highway, where he testified to have taken a "right good drink" before leaving home.

8. PROHIBITION ACT—*Provision as to Jail Sentence Where Offense is Inadvertent.*—Section 5 of the prohibition act (Acts, 1918,

p. 579) imposes upon the trial courts the responsibility of applying the ameliorative punishment of fine without imprisonment in every case where it appears that the crime is inadvertent. and where punishment by fine is sufficient to vindicate the law. The exercise of discretion so vested in the trial court will not. be reviewed by the Supreme Court of Appeals except in cases of clear abuse of that discretion, or where based upon illegal and inadmissible testimony.

9.  PROHIBITION ACT—*Surety to Keep the Peace.*—The bond authorized by section 43 of the prohibition act (Acts 1918, p. 608) is intended as a precautionary measure to prevent future violations of the law by a convicted person who is likely to be guilty of such violations. But where a man of good character has. violated one of the provisions of the act, and there is no evidence indicating that he is likely again to do so, it is not proper to require him to execute a bond of $1,500, conditioned that he will not violate any of the provisions of the act for the term. on one year.

Error to a judgment of the Circuit Court of Rockingham. county.

*Reversed.*

The opinion states the case.

*E. D. Ott* and *M. L. Walton,* for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

PRENTIS, J., delivered the opinion of the court.

The accused was convicted of the unlawful transportation of intoxicating liquor, and sentenced to pay a fine of $50 and be confined in the county jail for one month.

The facts shown are, that he is a physician of high standing and reputation in his community, who left his home at Mt. Jackson for Harrisonburg, driving his own automobile, his purpose being to meet his brother, a physician and

surgeon of Harrisonburg, intending to go from there to Staunton to board a train at 7:30 in the evening for Danville, to attend the wedding of a nephew, which was to take place there the next day.  Before starting he took a drink of intoxicating liquor in his own home.  He claims that he discovered that there was something wrong with the steering gear of his automobile before he left Mt. Jackson; that when he called the attention of a mechanic to it he was told, in substance, that the trouble was slight and that probably it would not give him any serious trouble. On his way he had two collisions with other travelers on the highway, as the result of the second of which his car was left in the ditch on the side of the road and could not be further operated.  He claims that the cause of these collisions was the failure of the steering apparatus of the machine to operate properly.  On the other hand, the Commonwealth attributes his inability to control his car and these collisions to the fact that he was very much intoxicated.  After the second collision he transferred his valise to a motor truck which was returning towards Mt. Jackson, his purpose being to return home.  On this return journey he was overtaken by the sheriff and his deputy, who had a warrant charging him with reckless driving, which warrant had been issued upon the complaint of a commercial traveler with whose machine he had collided, for which offense he has since been tried and fined.  When the officers arrested him upon this warrant he had in his overcoat pocket, which he was at that time wearing, a pint bottle, partly filled with whiskey.  There is some confusion in the testimony as to the precise quantity of liquor remaining in the bottle.  This prosecution and conviction is the result of this discovery.

It was shown by a large number of highly reputable witnesses, and no attempt was made to contradict them, that the accused is a man who had a very high reputation

for truth and veracity, that he was well beloved and respected both as a physician and as a man, and that he was in full practice. He testified that he did not know that he violated any law, that when he left home the partly filled bottle was put in his valise, and that afterwards, when he took the truck to return home, the bottle rattled against a mirror, or perhaps some other articles in the valise, and for fear that one or the other might break, he took the bottle out and put it in his overcoat pocket. That he thought that the law allowed him thus to carry not exceeding one quart of intoxicating liquor for his personal use.

Taking up the errors which are assigned, we find that certain witnesses for the Commonwealth were allowed to testify as to the events which preceded the finding of the liquor in his overcoat pocket, and it is claimed that inasmuch as the prosecution is for the unlawful transportation of liquor, the testimony relating to the other misdemeanor with which he had been charged—that is, the reckless driving,—was impertinent and irrelevant to the issue.

[1, 2] Of course this rule is universally accepted, but it would have been difficult for the witnesses to have detailed the pertinent facts without at least some allusion to this charge of reckless driving. The officers, for instance, had to explain why they were about to arrest him, and the testimony which was received merely gave the attending circumstances. It was properly admissible as part of the *res gestae.* In addition to this the attorneys for the accused, on cross-examination, enquired into these occurrences which preceded the discovery of the liquor at the time of his arrest, and the accused himself also fully related his recollection of all of the circumstances immediately preceding his arrest. He, therefore, must be held to have waived his original objection to this testimony, so that even if incompetent, it furnishes no ground for reversal.

*New York Life Ins. Co.* v. *Taliaferro*, 95 Va. 522, 28 S. E. 879; *Moore Lumber Corp.* v. *Walker*, 110 Va. 775, 67 S. E. 374, 19 Ann. Cas. 314; *Chesapeake & Ohio Ry. Co.* v. *Barger*, 112 Va. 688, 72 S. E. 693.

Another assignment of error is the giving to the jury at the instance of the Commonwealth an instruction which reads thus: "The jury are instructed that if they believe from the evidence that the accused, S. S. Snarr, had on his person while traveling on the Valley Turnpike ardent spirits, even though the quantity be only six ounces, then he is guilty of unlawfully transporting liquor, as charged in the indictment."

[3] It is urged that this instruction ignores that provision of section 39 of the prohibition act (Laws 1918, Chap. 388) which permits a traveler to carry "in his baggage for the *bona fide* use of himself or his family, and not as a means of evading the intent and meaning of this act, ardent spirits not in excess of one quart." It is insisted that this provision authorizes one to carry with him, under his personal control, not to exceed one quart of intoxicating liquor, without reference to the manner in which it is carried.

It seems to us that the language of the act is so clear as hardly to need interpretation, and that it fails to sustain this contention. The language creates an exception to the general inhibition, and permits a traveler to carry a limited quantity of liquor in the baggage. The general inhibitions of the statute are qualified by the language of the permission authorizing it to be carried in the baggage, and the inference therefrom is that it cannot be carried on the person outside of his baggage.

We have been referred to several cases arising between travelers and common carriers defining baggage. A typical case is that of *Toledo, Wabash & Western R. Co.* v. *Hammond*, 33 Ind. 379, 5 Am. Rep. 221, in which the traveler's opera glasses, which were in his trunk, which was lost,

were held to be a part of his baggage, and it is shown from the definitions referred to in that case that baggage consists of apparel, ornaments, a few books for the amusement of reading, a watch, ladies' jewelry, and, according to 1 Bouvier's Law Dict. 180, it is said: "From analogy to the foregoing articles, it will be obvious that the term baggage must comprehend an almost infinite number and variety of articles not enumerated here."

Then in *Macrow* v. *The Great Western Railway Co.*, L. R., 6 Q. B. 612, 3 Albany Law Journal, 476, this definition of baggage is found: "We hold the true rule to be, that whatever the passenger takes with him for his personal use or convenience, according to the habits or wants of the particular class to which he belongs, either with reference to the immediate necessities, or the ultimate purposes, of the journey, must be considered as personal luggage. This would include not only all articles of apparel, whether for use or ornament,   *   *   but also the gun case or the fishing apparatus of the sportsman, the easel of the artist on a sketching tour, or the books of the student, and other articles of an analogous character, the use of which is personal to the traveler and the taking of which has arisen from the fact of his journeying."

Then the question of what is baggage has arisen under the statutes imposing customs duties on importations, and it has been held that a package of precious stones, found in the pocket of a passenger is forfeitable under the federal statute (U. S. Comp. St. §5499) forbidding the concealment of dutiable articles and imposing duties on such articles "found in the baggage of any person arriving within the United States." *Two Hundred and Eighteen and One-Half Carats Loose Emeralds* v. *United States*, 154 Fed. Rep. 839, 83 C. C. A. 475.

These questions raised in these two lines of cases, however, are not similar to that here involved. This question

is not whether intoxicating liquor is baggage, nor is there any question as to the concealment of imported articles with intent to evade the customs duties. The language here does not require us to ascertain whether or not, under certain circumstances, intoxicating liquor may or may not constitute baggage of the traveler. The statute assumes that the traveler has baggage, and expressly authorizes him to carry as much as one quart of ardent spirits therein. Elaboration is confusing rather than illuminating. As above indicated, the express permission to carry in the baggage is here equivalent to an inhibition against carrying it on the person; and intoxicating liquor carried in the pocket of the traveler's clothing which he is at the time wearing is being carried on his person and not in his baggage. It may very well be that a traveler, by means of a shawl strap, or some other container, may lawfully carry one quart of liquor in his overcoat pocket, that overcoat being not on his person, but carried as a separate bundle or package; but the evidence here being that the overcoat was at the time worn by the accused as a part of his apparel, it seems to us perfectly clear that the liquor was carried on his person and not in his baggage. So that the refusal of the instruction was clearly right.

The law prohibiting the carrying of concealed weapons has long been in force, and we think we risk nothing in saying that one who carries a weapon in his baggage, does not violate the statute prohibiting the carrying of concealed weapons on his person, and by implication the prohibition against the carrying of intoxicating liquor upon the person is by this statute as clear and undoubted as the prohibition against carrying weapons concealed on the person.

It is not difficult to appreciate the policy which permits one to carry a limited quantity of liquor concealed from common view in his baggage; while it prohibits the carry-

ing of liquor upon the person, easily accessible for immediate use as a temptation to public drinking, both to the traveler himself and to others.

[4] It is also claimed that this instruction was erroneous because it was clear that the liquor was not being transported for sale. This contention is based upon the language of section 3, reading thus: "It shall be unlawful for any person in this State to manufacture, transport, sell, keep, or store for sale, offer, advertise or expose for sale, give away or dispense or solicit in any way, or receive orders for or aid in procuring ardent spirits, except as hereinafter provided." Acts 1918, p. 578.

We think the language clearly does not bear the construction contended for. The words "for sale" there, merely qualify the words immediately preceding, "keep, or store." It is lawful under some circumstances to keep or store a limited quantity of intoxicating liquor, but it is unlawful to keep or store such liquor for sale, except as it is expressly authorized for sacramental, medicinal, scientific, mechanical or pharmaceutical purposes. The context and punctuation of the sentence demonstrate this. It is generally unlawful to manufacture liquor, whether for sale or not, as well as to transport liquor, whether for sale or not, and as to these offenses there is no qualification suggested by the structure of the sentence, for immediately following the prohibition against transportation of liquor is the prohibition against the sale of liquor as an independent misdemeanor under the statute. *Burton* v. *Commonwealth,* 122 Va. 847, 94 S. E. 923.

There is no error in the instruction, for under the circumstances it was unlawful for the accused to transport liquor in this State, except in his baggage, whether for sale or not.

The court also refused other instructions based upon the same erroneous view of the law, and what we have said

is sufficient to indicate our opinion that these were also properly refused.

[5] The assignment of error which raises the gravest doubt and demands the most careful consideration is based upon that provision of the statute, section 5 (Acts 1918, sec. 5, p. 579) reading thus: "*   *   but whereupon the trial of any charge of a violation of this act, it shall appear to the court trying the case that there has been no intentional violation of any provision thereof, but an unintentional or inadvertent violation thereof, then such court shall instruct the jury that they cannot impose a jail sentence."

The accused asked the court to instruct the jury under this section not to impose a jail sentence, upon the ground that there had been no intentional violation of the act, but the court refused to do so. This refusal to give this instruction should be considered in connection with an exception to certain evidence to which the accused also excepted.

While the witness, Paxton Williamson, was under examination, and after he had testified to the excellent reputation of Dr. Snarr, for veracity, as a physician, and as a citizen, the record shows the following questions and answers:

"The Court: Did you ever hear of his operating his car too rapidly, as a fast driver, reckless driver, when under the influence of liquor?

"Witness: Your Honor, I can't say to my certain knowledge that I ever saw Dr. Snarr—

"The Court: Did you ever hear of Dr. Snarr operating his car when under the influence of liquor?

"Mr. Ott: Your Honor, please, with all deference to the court, I want to object to the questions you have asked. I did not know the charge here was reckless driving, but thought it was for bootlegging. (Objection overruled, exception.)

"Witness: No, sir; I·can't say that I have. I want to qualify my statement to this extent; rumor has it that he operated a car under the influence of liquor, but whether he did or not, I do not know.

"The Court: The question of the court was, did you ever hear that he did that, ever hear any rumor of that sort?

"Witness: In this case at the bar I have heard it.

"The Court: But prior to this occurrence on the pike down there, did you ever hear that he had operated his car while under the influence of liquor?

"Witness: I don't think I have.

"The Court: You never heard it before that time?

"Witness: No, sir; I don't think I did.

"The Court: Did you ever hear anybody speak of any other occasion when it was done by him?

"Witness: That Dr. Snarr operated his car when under the influence of liquor?

"The Court: Yes, sir. Prior to this case here.

"Witness: Yes, sir, I have."

The accused was on trial for the unlawful transportation of liquor, and it is clear that this testimony was irrelevant and immaterial on that issue. Under the inquisitorial questions of the court, the witness was led to testify that he had heard prior to the case on trial that Dr. Snarr had operated his car while under the influence of liquor. The testimony did not remotely affect the charge that the accused had unlawfully transported liquor, and its relation to the general reputation of Dr. Snarr was also remote. The examination proceeded further, and the witness testified that he did not know anything about the truth or falsity of that accusation; that he had seen Dr. Snarr quite frequently in his car, never saw him when he was operating his car under the influence of liquor; that he had a large practice, was going about in his car every

day, was regarded as one of the best citizens in the community, and was generally loved in the community as a physician and as a man. One result of the introduction of the testimony is to show that the witness had heard that Dr. Snarr had violated some other provision of the law. Our first impression as to this testimony, which seems to us so clearly inadmissible, both because it was hearsay and irrelevant, was that it should be held to be harmless error, because the other evidence showed without contradiction that Dr. Snarr was carrying intoxicating liquor upon his person, and the jury having given him the minimum penalty, this error constitutes no ground for reversal because no prejudice to the accused was shown. Upon mature consideration, however, we feel that the error was injurious, when considered in connection with Dr. Snarr's testimony that his violation of the statute was inadvertent, because he thought that he had the right to carry that quantity with him in any way that he saw fit.

[6] This clause of the statute was enacted with the manifest purpose to relieve against undue hardship which might arise where it was shown that the offense was inadvertent, slight, with little relation to the general intent to prohibit traffic in intoxicating liquor, and in such cases to provide a slighter punishment to be inflicted on guilty persons, if it appeared to the trial court that the ends of justice would be thereby subserved. It was not the legislative intent to change the rules of evidence or the methods of practice and procedure in criminal cases; nor was it thereby intended that the conduct of prosecutions under this act should differ from prosecutions for other misdemeanors. The General Assembly apparently intended to provide that if in such a prosecution this defense was made, were not made as a mere subterfuge by habitual or deliberate violators of the law, and it did not appear from the other legitimate

evidence introduced upon the trial that there had been other violations of the statute, then that there should be no imprisonment. Such other violations might very well incidentally appear from the evidence. For instance, under a prosecution for the unlawful transportation of liquor, it might appear that liquor was being illegally sold or unlawfully dispensed during the journey. We do not think, however, that it could possibly mean that during the trial for a specific offense, the court could divert attention from the crime charged, for which the accused was being prosecuted, and investigate other possible offenses in order to determine whether the extreme or the modified punishment should be inflicted. To make such an investigation before the jury would certainly have a tendency to prejudice the accused as to the specific offense for which he was being tried, and to induce the jury to inflict a heavier punishment therefor, leaving him still liable to be prosecuted for the other offenses. Of course it could not mean that the judge should exclude the jury and suspend the trial in order that he might make independent investigations as to these other offenses prohibited by the statute.

These considerations lead us to conclude that the introduction of this testimony was highly prejudicial to the accused.

[7] We note from the Attorney-General's brief and in the memorandum of the court, that it appears to be assumed that the prisoner must have been violating the law against drinking on a public highway, because the bottle was partly emptied, and because the prisoner's intoxication was apparent. We do not think that the testimony justifies this conclusion as inevitable. He left home at about 4:30 o'clock in the afternoon, and expected to be in Staunton, a distance of something like fifty miles away by 7:30 of the same day. He does not tell us the precise quantity of liquor

which he took before leaving home, but says that he took a "right good drink." We do not know the percentage of alcohol in the liquor, and its intoxicating effect would depend as well upon this, as, to some extent, upon his habits and physical condition. It seems to us that it is a surmise that he had violated the law against drinking on the highway, that there is nothing improbable in his positive statement that the only drink he had taken was the one he took in his home, and that it is neither impossible nor even improbable that his intoxicated condition resulted from that lawful act. Feeling, as the members of this court do, that if they had been vested with the discretion which is vested in the trial court, the instruction would have been given, we are of opinion that the error in admitting this irrelevant testimony must have prejudiced the prisoner's cause with the learned and upright judge when he was asked to instruct the jury not to impose a jail sentence, and therefore that he should review his own judgment on that point. That the accused is a man of very high character cannot be doubted from the testimony; and we think that the case is of that general character which was in the contemplation of the General Assembly when it provided for an amelioration of the punishment. Of course, the law is no respecter of persons, and the higher the position, character and intelligence of the accused, the more certain and sure should be his punishment for any violation of the law; but the good or bad reputation of the accused for veracity, in every case, affects his credibility, either favorably or unfavorably, and we find nothing in this record to justify discrediting the testimony of Dr. Snarr on this point.

Our conclusion is that the court erred in admitting this testimony, if it was admitted for the purpose of showing other violations of the prohibition statute, for which vio-

lations, if they can be proved, he was liable to punishment, and that his punishment in this case should not be enhanced solely because of such inadmissible evidence.

[8] The provision of the statute of which we have been speaking was not intended to change the maxim, that ignorance of the law excuses no man, but it does mean that the Commonwealth, in the administration of its criminal laws, does not intend to inflict excessive punishments which do not fit the crime under investigation. The statute imposes upon the trial courts the responsibility of applying the ameliorative punishment of fine without imprisonment in every case where it appears that the crime is inadvertent and where punishment by fine is sufficient to vindicate the law. The exercise of discretion so vested in the trial court will not be reviewed by this court except in cases of clear abuse of that discretion, or where based upon illegal and inadmissible testimony, but that the statute was enacted for application to cases of this general character we have no doubt.

[9] The court also required the accused, under section 43 (Acts 1918, p. 608), to execute a bond of $1,500, conditioned that he would not violate any of the provisions of the act for the term of one year. The bond authorized by the statute is intended as a precautionary measure to prevent future violations of the law by a convicted person who is likely to do so. Apparently there are many men habitually engaged, for gain, in the illegal manufacture, transportation and sale of intoxicating liquor in violation of the statute. When these habitual or other deliberate lawbreakers are convicted, bonds like this should be required, but in a case like this, where a useful citizen of high reputation has violated one of the provisions of this statute, and there is no evidence indicating that he is likely again to do so, it seems to us that to require him to give such a

bond is an unnecessary humiliation, and not in the contemplation of the General Assembly.

Upon the whole case we are of opinion that the court erred in the admission of the testimony which we have criticised, that under the peculiar circumstances this was prejudicial error, and hence that the verdict should be set aside; so that the case will be remanded for a new trial in accordance with the views here expressed.

*Reversed.*