COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Elder and Lemons
Argued at Norfolk, Virginia


ROBBIN A. BYNUM
                                           OPINION BY
v.          Record No. 2194-97-1    JUDGE DONALD W. LEMONS
                                          NOVEMBER 3, 1998
COMMONWEALTH OF VIRGINIA


         FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                   Von L. Piersall, Jr., Judge

         S. Earl Griffin (Daniel D. Dickenson, III;
         Griffin, Pappas & Scarborough, P.C., on
         briefs), for appellant.

         John H. McLees, Jr., Assistant Attorney
         General (Mark L. Earley, Attorney General, on
         brief), for appellee.


     Robbin A. Bynum was convicted by a jury of aggravated

malicious wounding, use of a firearm while committing aggravated

malicious wounding, and maliciously shooting into an occupied

vehicle.  On appeal, he contends the trial court erred in:  (1)

allowing the Commonwealth to introduce a statement during its

case-in-chief that the court had previously suppressed; (2)

allowing the statement to be used as substantive evidence, rather

than for the limited purpose of impeachment; and (3) admitting

the entire statement, as opposed to the portions which were

inconsistent with his trial testimony.  Mr. Bynum also contends

that if the statement had been properly suppressed, the remaining

evidence was insufficient to support his convictions.  We

disagree with each of his contentions and affirm.

BACKGROUND

On May 17, 1996, in the early evening hours, Katherine Bynum, the victim, was shot by her husband, Robbin A. Bynum, appellant, while she was seated in Mr. Bynum's truck in the driveway of their home. Following a disagreement between them, Mr. Bynum fired a bullet through the windshield hitting Mrs. Bynum. She left the scene immediately after the shooting. The evidence reveals that Mr. Bynum did not know his wife had been hit by the bullet.

The following morning, Mr. Bynum came to the Portsmouth Police Department for questioning. While there, he made a statement regarding the incidents of the previous evening. Prior to trial, the trial judge ruled that the statement was made in violation of Miranda v. Arizona, 384 U.S. 436 (1966), and granted Mr. Bynum's motion to suppress. At the trial, however, counsel for Mr. Bynum referred to a portion of the suppressed statement in his opening statement to the jury. Counsel acknowledged that Mr. Bynum had fabricated a story for the police during his initial questioning and stated that Mr. Bynum would address his statement in his trial testimony. The Commonwealth's attorney made no objection during counsel's statement.

After Mr. Bynum's counsel completed his opening statement, the Commonwealth's attorney sought a ruling from the court regarding whether opposing counsel's reference to the suppressed statement allowed the Commonwealth to introduce the statement for

either impeachment or substantive purposes.  Because defense counsel had told the jury about the statement, the trial judge ruled that the Commonwealth could introduce the statement in its case-in-chief or for impeachment of the defendant.  The Commonwealth later introduced Mr. Bynum's entire statement into evidence as a part of its case-in-chief.

Mrs. Bynum testified at trial that she arrived at the home she shared with Mr. Bynum at approximately 4:30 p.m. on May 17, 1996.  She stated that they spent several hours together and that they shared a liter of rum.  Some time later that evening, Mrs. Bynum stated that she entered Mr. Bynum's truck to go buy cigarettes before they went to a local festival.  She testified that a disagreement ensued between the couple when she found a bottle of vodka hidden in the truck that Mr. Bynum had allegedly consumed before she arrived home that afternoon.  Mrs. Bynum testified that the two argued through the closed window of the truck.  Mrs. Bynum stated that as she backed the truck out of the driveway, she did not see a gun in her husband's hand, nor did she see him shoot, although she heard the shot and felt the bullet as it entered her shoulder.

Detective Leroy Saunders, Jr., of the Portsmouth Police Department, testified that he took a statement from Mr. Bynum on the morning of May 18, 1996.  The audiotape of the statement was played for the jury.  In the statement, Mr. Bynum said that an altercation had occurred between himself and his wife on the

previous evening.  Mr. Bynum stated that his wife left their home in his truck to purchase cigarettes and that an argument ensued when she returned.  Mr. Bynum stated that his wife suspected him of seeing an old girlfriend and that Mrs. Bynum retrieved his gun from their bedroom and threatened to go to the house of the woman to kill her.  In this statement, Mr. Bynum described a "tussling contest" between himself and his wife which took place outside the house and in front of the truck when he tried to remove the gun from his wife's hands.  Mr. Bynum told Detective Saunders that during the struggle, a bullet was discharged which entered the windshield of the truck.  Mr. Bynum stated that after the gun went off, he was able to remove the gun from her hands, and he began to walk back to the house.  He stated that his wife then entered the truck and began yelling at him until he went into the house.  Mr. Bynum stated that his wife then drove away in the truck.  In his statement to Detective Saunders, Mr. Bynum also stated that he had thought about killing his wife, although he had not had such thoughts the previous evening.

Mr. Bynum testified on his own behalf that on the evening of the shooting, he was carrying a large sum of money on his person, as well as a gun for protection.  He stated that he and his wife had an argument when she found out he had been drinking earlier that afternoon.  He testified that his wife was in the truck while they argued.  He stated that he removed his gun from his pocket and displayed it to scare his wife.  He stated that he

accidentally shot the windshield of the truck when he lost his balance and fell into a flowerbed on the way back to the house. Mr. Bynum further stated that because his wife drove the truck out of the driveway, he did not realize she had been shot and he continued into the house.

ADMISSION OF THE STATEMENT

Mr. Bynum contends the trial court erred when it allowed the Commonwealth to introduce a statement during its case-in-chief that had been previously suppressed. For the reasons that follow, we hold that the introduction of the statement was not reversible error.

The court's initial suppression of the statement was erroneous. In determining whether a suspect is in custody for purposes of Miranda, "the only relevant inquiry is how a reasonable man in the suspect's shoes would have understood his situation." Berkemer v. McCarty, 468 U.S. 420, 442 (1984). The "totality of the circumstances" considered in this inquiry includes "whether a suspect is questioned in neutral or familiar surroundings, the number of officers present, the degree of physical restraint, and the duration and character of the interrogation." Lanier v. Commonwealth, 10 Va. App. 541, 554, 394 S.E.2d 495, 503 (1990). A police officer's subjective view that the individual being questioned is a suspect, if undisclosed, does not bear upon the question of whether the individual is in custody for Miranda purposes. Stansbury v.

California, 511 U.S. 318 (1994).  The officers' beliefs are relevant only to the extent that "potential culpability of the individual [is] manifested to the individual."  Harris v. Commonwealth, 27 Va. App. 554, 565, 500 S.E.2d 257, 262 (1998).

At the hearing held on the motion to suppress Mr. Bynum's statement, Sergeant Timothy J. Stenger of the Portsmouth Police Department testified that on May 18, 1996, at approximately 8:00 a.m., he arrived at the Bynum home to speak with Mr. Bynum. Sergeant Stenger stated that Mr. Bynum volunteered to accompany the officers to the police station.  Mr. Bynum was given the option of driving himself to the station, but he chose to ride with the officers.  Mr. Bynum was continually assured that he was free to leave and that he was not under arrest.  Mr. Bynum was never handcuffed.

Detective Leroy Saunders, also of the Portsmouth Police Department, testified about his interview with Mr. Bynum.  The detective stated that he did not give Mr. Bynum his Miranda warnings because, although he believed Mr. Bynum was the only suspect throughout the interview, he did not consider him to be in custody at that time.  Mr. Bynum returned home after making his statement.  Under these circumstances, Mr. Bynum was not in custody at the time of his interview.

Mr. Bynum argues that the trial court erred by allowing the previously suppressed statement to be introduced in the Commonwealth's case-in-chief.  In addition, Mr. Bynum argues that

only those portions that were inconsistent with his trial testimony should have been admitted.  He suggests that admission of his statement should have been limited during cross-examination or rebuttal to those specific portions that would impeach his testimony.

The trial court initially suppressed Mr. Bynum's statement.  "A trial court is empowered to change a legal determination as long as it retains jurisdiction over the proceedings before it."  Turner v. Wexler, 244 Va. 124, 128, 418 S.E.2d 886, 888 (1992).  Therefore, the trial court could reverse its previous decision to suppress the statement.

In addition, an appellate court may affirm the judgment of a trial court when it has reached the "right result for the wrong reason."  Driscoll v. Commonwealth, 14 Va. App. 449, 451, 417 S.E.2d 312, 313 (1992).  Following Mr. Bynum's counsel's use of the statement in his opening statement, the court stated that counsel had "opened the door" to its use and allowed the Commonwealth to introduce it during its case-in-chief.  However, statements made during an opening statement are not evidence; therefore, opening statements may not "open the door" to otherwise inadmissible evidence.  Fields v. Commonwealth, 2 Va. App. 300, 307, 343 S.E.2d 379, 382-83 (1986).  We hold that although the trial court's reason for allowing the previously suppressed statement to be introduced was incorrect, because the initial suppression was in error, the right result was reached.

A statement made by a defendant constitutes a party admission, admissible not only for impeachment, but also as substantive evidence. Satcher v. Commonwealth, 244 Va. 220, 256, 421 S.E.2d 821, 843 (1992).

Additionally, Mr. Bynum testified on his own behalf. "[W]here an accused unsuccessfully objects to evidence which he considers improper and then on his own behalf introduces testimony of the same character, he thereby waives his objection, and we cannot reverse for alleged error." Hubbard v. Commonwealth, 243 Va. 1, 9, 413 S.E.2d 875, 879 (1992); see also Snead v. Commonwealth, 138 Va. 787, 801-02, 121 S.E. 82, 86 (1924); Culbertson v. Commonwealth, 137 Va. 752, 757, 119 S.E. 87, 88 (1923); Hutchinson v. Commonwealth, 133 Va. 710, 716-17, 112 S.E. 624, 626 (1922); Snarr v. Commonwealth, 131 Va. 814, 818, 109 S.E. 590, 592 (1921). Having testified about the substance of his previously suppressed statement, Mr. Bynum rendered harmless any error that may have occurred from the introduction of the statement in the Commonwealth's case-in-chief.

When the sufficiency of the evidence is an issue on appeal, an appellate court must view the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth. Cheng v. Commonwealth, 240 Va. 26, 42, 393 S.E.2d 599, 608 (1990).

Apart from Mr. Bynum's statement at the police station,

testimony also included Mrs. Bynum's testimony regarding the details of the shooting.  She described the events leading up to the shooting, stating, "[h]e shot me."  In addition, Mr. Bynum admitted he lied to the police when he gave his initial statement.  Furthermore, Mr. Bynum admitted he shot his wife.  The evidence was sufficient to support Mr. Bynum's convictions.

Accordingly, the convictions are affirmed.

Affirmed.

Benton, J., concurring.

I believe the majority's use of the "right for the wrong reason" principle is inappropriate under the circumstances of this case.

First, the Commonwealth does not argue that the principle is applicable to this case. Indeed, the Commonwealth concedes on brief that the trial judge's pretrial suppression ruling, although "wrong . . . [, it] has, however, become the law of the case." The Commonwealth's brief does not urge this Court to apply the "right for the wrong reason" analysis the majority invokes.

Second, the trial judge's ruling suppressing the statement was a pretrial ruling that the Commonwealth could have appealed, see Code § 19.2-398, and elected not to do so. When the Commonwealth failed to appeal that ruling pursuant to Code § 19.2-398, it was barred from seeking a reversal of that decision. "[T]he legislature has narrowly limited the Commonwealth's right to appeal suppression orders." Commonwealth v. Ragland, 7 Va. App. 452, 453, 374 S.E.2d 183, 183 (1988). Thus, we have no authority "in this appeal [to] permit the Commonwealth to accomplish indirectly what it cannot do directly, and we [should] therefore reject the alternative ground advanced for the admissibility of [the] confession." Hart v. Commonwealth, 221 Va. 283, 290, 269 S.E.2d 806, 811 (1980).

Because we must strictly construe the limitation on the

Commonwealth's right to appeal the trial judge's pretrial ruling, see Commonwealth v. Hawkins, 10 Va. App. 41, 44, 390 S.E.2d 3, 5 (1990), we cannot now review the pretrial suppression ruling under the rubric of applying the "right for the wrong reason" doctrine. The sole argument the Commonwealth advances for affirming the trial judge's ruling is that the admission of Bynum's statement was harmless error because the statement "was nevertheless admissible to impeach Bynum's trial testimony that he shot his wife accidentally." I would affirm the conviction for that reason.

After the trial judge's pretrial ruling suppressing Bynum's statement because it was taken in violation of Bynum's Miranda rights, Bynum's counsel informed the jury in his opening remarks that Bynum would testify and would tell the jury that Bynum gave a statement to the police and lied while giving that statement. Bynum's counsel then detailed certain events that Bynum related to the police when he gave his statement. Bynum did, in fact, testify in his defense. He related to the jury the events that led to his interrogation by the police and testified concerning statements he made to the police.

Pursuant to Harris v. New York, 401 U.S. 222 (1971), Bynum's statement could have been used by the Commonwealth in cross-examination or in rebuttal to impeach Bynum's trial testimony. Id. at 226. See also Oregon v. Hass, 420 U.S. 714, 722 (1975). Furthermore, the record makes abundantly clear that

Bynum's decision to testify about the statements he made to the police was independent of the Commonwealth's use of his statement in its case-in-chief.  Bynum's counsel signalled that decision before the Commonwealth put on its evidence.  I believe these circumstances render the earlier admission of Bynum's statement to the police harmless error.

At trial, Bynum argued that the evidence was insufficient to convict him because the evidence failed to prove he had the requisite specific intent.  Bynum abandons that argument on appeal and argues, instead, that in the absence of his statement to the police the evidence was insufficient to prove he shot the gun.  Bynum's testimony at trial proved he shot the gun.  Thus, I would hold that the evidence was sufficient to prove beyond a reasonable doubt that Bynum was guilty of the offense of aggravated malicious wounding.

For these reasons, I would also affirm the convictions.