COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, Haley and Beales
Argued at Chesapeake, Virginia


DARRYL TYRONE DOZIER, JR.

                                            MEMORANDUM OPINION[*] BY
v.       Record No. 0812-07-1          JUDGE RANDOLPH A. BEALES
                                               JULY 15, 2008

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Joseph Canada, Jr., Judge

    (Duncan R. St. Clair III; St. Clair & Rosenblum, on brief), for
    appellant.  Appellant submitting on brief.

    Rosemary V. Bourne, Assistant Attorney General (Robert F.
    McDonnell, Attorney General, on brief), for appellee.


A jury convicted Darryl Tyrone Dozier, Jr. (appellant) of possession of cocaine.[1]  On

appeal, he argues that the trial court erred when it denied his motion to suppress a recorded

statement and erred in finding the evidence was sufficient to convict him of possession of

cocaine.  After considering appellant's arguments, we affirm the conviction and remand for

correction of a clerical error in the final order.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The final order lists appellant's conviction as "Manufacture, Sell, Distribute or Possess a Controlled Substance with Intent to Manufacture, Sell or Distribute," the crime for which he was originally indicted.  However, the jury clearly convicted appellant of the lesser-included offense of "Simple Possession of a Controlled Substance."  Therefore, this case is remanded to the trial court solely to correct this clerical error in the final order.  See Code § 8.01-428.  The jury sentenced appellant for a simple possession conviction.
    The final order also lists two other convictions, "Felony Failure to Appear" and "Drive on Suspended or Revoked Operator's License."  These convictions are not before us in this appeal and are not discussed herein.

# I. MOTION TO SUPPRESS[2]

On June 21, 2006, Detective Sean Coerse drove to the Atlantis Apartments in Virginia Beach, looking for appellant. Detective Coerse saw appellant get into a parked Mitsubishi Diamante, back the car out, and drive past the detective, who was going in the opposite direction. After he passed the detective, appellant immediately made a left turn into another parking lot, parked, got out of his car, and disappeared from the detective's sight.

The police eventually found and arrested appellant on unrelated charges. During a search of the Diamante, Detective Coerse found a plastic bag containing four pieces of crack cocaine and several items with appellant's name on them. No one else's belongings were in the car.

Detective Coerse took appellant to the police station. At trial, appellant stipulated that the detective "properly Mirandized" him[3] and "that lawfully a waiver and consent to be interviewed took place." They began talking in an interview room where their conversation was recorded via a video camera. Appellant initially denied using or selling cocaine. He claimed Kamesha Caldwell owned the Diamante. Eventually, the following conversation occurred:

> [Detective:] You don't want to talk about this stuff anymore?
>
> [Appellant:] No, man.
>
> [Detective:] Okay.
>
> [Appellant:] I'll just talk to my grandma and let her handle the situation.
>
> [Detective:] All right. You know what's going to happen? I'm going to serve the indictment – the felony indictments on you, and

---

[2] The Commonwealth argues that appellant waived this argument during the hearing on the motion to strike. After reviewing the record, we find the Commonwealth misinterpreted a statement that appellant's counsel made during the hearing. Appellant did not concede that the trial court was correct when it denied his motion to strike. Therefore, appellant did not waive his right to appeal the trial court's ruling on his motion to suppress.

[3] See generally Miranda v. Arizona, 384 U.S. 436 (1966).

then I'm going to charge you with possession with intent to distribute cocaine. I'm going to charge you with driving on a –

[Appellant:] I didn't have no –

[Detective:] -- suspended license.

[Appellant:] I didn't have no – I won't driving.

[Detective:] (Inaudible.) You weren't driving?

[Appellant:] No. You didn't pull me over when I was driving.

At this point, Detective Coerse explained that he would testify at trial that he saw appellant driving the car. Appellant asked why the officer did not stop him while he was driving, and the detective answered that he was in an unmarked car and wearing civilian clothes, so he felt unable to stop appellant. The detective then attempted to determine if appellant wanted to continue talking or to go before the magistrate.

[Detective:] Okay. So, you know, if – like I said, if you don't want to talk about it, what's going to happen is I'm going to seize the car, I'm going to charge you with an additional distribution of cocaine, and we'll take you over there and we'll go from there.

[Appellant:] Okay. Yes, sir. Whatever you say, sir. I can't argue with you, man.

[Detective:] I don't want to argue with you.

[Appellant:] I just want to go ahead and go on (inaudible).

[Detective:] You know, my thing is is I just think you were – I think you happened to be present during the murder and not -- not the shooter.

[Appellant:] Yeah. You're saying, Go on with my business; but I just want – you do understand (inaudible).

[Appellant:] Yeah. I'm going to jail right now. That's why I'm saying, let me go ahead to jail, man, whatever is going on. All right. Whatever is going on. I already know what's right. Know what I mean? I know I ain't in the wrong, so I want to go on and get everything right so – you sneaky, man.

- 3 -

Shortly after the above-quoted conversation, appellant admitted that he sold drugs on occasion. He also asked to make a phone call, which he did, using the detective's cell phone. Appellant was left alone in the interview room. He called Holly, one of his girlfriends. Appellant's side of the conversation was recorded by the video camera, and Detective Coerse also overheard it from an observation room. Appellant told Holly that the car was his. He also said, as described by Detective Coerse, "if he had known the police were looking for him, he wouldn't have been carrying today."

Prior to trial, appellant filed a motion to suppress his statements to the detective, based on his invocation of his Fifth Amendment right to remain silent. The video recording was shown to the court. The trial court found appellant had invoked his right to remain silent, but then continued talking to the officers. The court concluded, therefore, it was not a clear invocation and denied appellant's motion.

When considering the denial of a motion to suppress based on an alleged Fifth Amendment violation, this Court reviews "the trial court's findings of historical fact only for 'clear error,' but" reviews "*de novo* the trial court's application of defined legal standards to the particular facts." Watts v. Commonwealth, 38 Va. App. 206, 213, 562 S.E.2d 699, 703 (2002); see also Commonwealth v. Redmond, 264 Va. 321, 327, 568 S.E.2d 695, 698 (2002). The facts here are not in controversy, only the application of the law to those facts is in dispute.

Appellant initially said that he did not want to talk to the detective about "this stuff" anymore.[4] At that point, Detective Coerse stopped asking appellant questions and discussing the events of that day. He instead began to explain the booking process. The detective did not ask

---

[4] Appellant points to this single statement (his "No, man" response to Detective Coerse's question, "You don't want to talk about this stuff anymore?") as the moment when he clearly invoked his right to remain silent. He does not argue that he invoked this right again later in the discussion.

- 4 -

appellant any more questions, but instead simply told appellant that he would now be served with several indictments charging him with various crimes. Appellant had told the detective previously that he was not very familiar with the criminal process. Providing information that explains this process to a suspect is not an interrogation, but is instead a part of booking procedure. In Watts, 38 Va. App. at 215-16, 562 S.E.2d at 704, this Court explained the "routine booking question exception" that allows an officer to ask questions after the invocation of the Miranda rights if those questions are part of the normal process of arresting a suspect. See also Gates v. Commonwealth, 30 Va. App. 352, 356-57, 516 S.E.2d 731, 733 (1999) (holding interrogation does not include questions or statements that normally attend the booking process).

We have noted that, if a suspect invokes his Miranda rights and an officer continues to ask questions or make statements that are the functional equivalent of questioning by the police, then those questions or statements are an impermissible continuation of the interrogation. Watts, 38 Va. App. at 214, 562 S.E.2d at 703. "The 'functional equivalent' of an interrogation is 'any words or actions on the part of the police (*other than those normally attendant to arrest and custody*) that the police should know are reasonably likely to elicit an incriminating response from the suspect.' [Rhode Island v.] Innis, 446 U.S. [291,] 301 [(1980)] (emphasis added)." Id. Here, Detective Coerse's recitation was designed to inform appellant about the process, not to elicit an incriminating response. The detective had little reason to expect that appellant would interrupt his description of the charges with a defense. In addition, appellant does not argue that the detective should have known that appellant would be inclined to interrupt and respond to the listing of the charges with incriminating information. See Pennsylvania v. Muniz, 496 U.S. 582, 601 (1990) (noting the "functional equivalent" determination of whether the statement was likely to prompt a response should be viewed from the suspect's perspective, regardless of the officer's actual intentions). The detective's listing of the charges was not "the functional equivalent of an

interrogation." Therefore, when the detective began explaining the booking procedure to appellant, he was not violating appellant's right to remain silent.

As the record shows, appellant then initiated further conversation with the detective. Appellant interrupted Detective Coerse and claimed he was not driving. Appellant at that point contradicted his announcement, made seconds earlier, that he no longer wanted to talk about "this stuff." Instead, he clearly did want to talk. He argued that he was innocent, claiming he was not driving. Although appellant said he wanted to discontinue the conversation, he then contradicted that declaration. Thus, appellant initiated more conversation with the officer.

After he invokes his right to remain silent, a suspect certainly can initiate a conversation with an officer that waives the previously invoked right, and the officer who responds to that initiation does not violate the suspect's rights by responding.

> [I]t is well settled that even if invoked, the <u>Miranda</u> right to silence can "be waived by the suspect if the waiver is made knowingly and intelligently." <u>Jackson v. Commonwealth</u>, 266 Va. 423, 432, 587 S.E.2d 532, 540 (2003). In fact, in <u>Michigan v. Mosley</u>, 423 U.S. 96, 102, 96 S. Ct. 321, 46 L. Ed. 2d 313 (1975), the United States Supreme Court expressly acknowledged that "a blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, *regardless of the circumstances*, would transform the <u>Miranda</u> safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests." (Emphasis added).

<u>Medley v. Commonwealth</u>, 44 Va. App. 19, 35, 602 S.E.2d 411, 418 (2004) (*en banc*). We must therefore consider whether appellant's initiation of the conversation with the officer was done with the intent to waive his rights.

Appellant had already heard his rights and indicated that he understood those rights. He conceded at the pretrial hearing that he understood them and initially waived them. This waiver at the beginning of the interrogation was not in writing. The Constitution does not require that a waiver be in writing, or even oral. Rather, in <u>North Carolina v. Butler</u>, 441 U.S. 369, 373

(1979), the Supreme Court found it constitutionally sufficient if "waiver can be clearly inferred from the actions and words of the person interrogated." See Medley, 44 Va. App. at 36, 602 S.E.2d at 418-19. Therefore, the lack of an explicit statement that appellant again waived his right to remain silent does not control our decision here.

In Oregon v. Bradshaw, 462 U.S. 1039, 1045 (1983), the Supreme Court found that Bradshaw, who had clearly requested an attorney, initiated further dialogue with the police when he then asked, "'Well, what is going to happen to me now?'" The Supreme Court explained that, while some questions may not indicate a desire to continue the interrogation, if the suspect's statement or question "evinced a willingness and a desire for a generalized discussion about the investigation," then the suspect's statement to the officer can properly reinitiate an interrogation. Id. at 1045-46.[5]

We find the analysis in Bradshaw, although discussing a different Fifth Amendment right, is applicable here. Appellant began talking about the crime immediately after saying he wanted to stop the conversation. He pled his innocence. He said he was not driving. When the detective rephrased his statement, appellant continued his dispute with the detective and said, "No. You didn't pull me over when I was driving." Appellant and the detective then began to discuss the events at Atlantis Apartments. Appellant, on his own initiative, continued the discussion, controlling the subject of the discussion. See Mosley, 423 U.S. at 103-04 ("Through the exercise of his option to terminate questioning [a suspect] can control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation."). He opted to

---

[5] Although Bradshaw was a plurality opinion, the dissenting opinion disagreed with the majority on the application of the test to determine waiver, arguing that the "communication or dialogue [must be] *about the subject matter of the criminal investigation*." Bradshaw, 462 U.S. at 1053 (dissenting opinion); see Correll v. Commonwealth, 232 Va. 454, 462-63, 352 S.E.2d 352, 356-57 (1987). Here, appellant's comments were directly related to the investigation.

continue the interrogation, even though he had just claimed only moments earlier that he wanted to end it. The record contains no evidence of intimidation, coercion, or deception to elicit appellant's statement in defense of his innocence. See Medley, 44 Va. App. at 37, 602 S.E.2d at 419.

In some cases, an initiation of conversation by a suspect clearly does not waive his rights, such as where he asks for a glass of water. Bradshaw, 462 U.S. at 1046. Here, however, appellant's statements directly addressed his behavior at the time of his arrest and he questioned the evidence against him. Thus, his initiation related "generally to the investigation" and was not a "necessary inquiry arising out of the incidents of the custodial relationship." Id. Appellant evidenced his desire to reinitiate the interrogation.

Although appellant was not re-Mirandized and did not explicitly state that he no longer wished to invoke his right to remain silent, the manner and context in which appellant initiated the conversation proved he knew his rights and intended to waive them. As the United States Supreme Court explained in Wyrick v. Fields, 459 U.S. 42, 48-49 (1982), where the Court criticized an Eight Circuit ruling that required "reminding" a suspect of his rights:

> The Eighth Circuit's rule certainly finds no support in Edwards, which emphasizes that the totality of the circumstances, including the fact that the suspect initiated the questioning, is controlling. Nor is the rule logical; the questions put to Fields after the [polygraph] examination would not have caused him to forget the rights of which he had been advised and which he had understood moments before.

The detective here faced a situation very similar to the situation faced by the officers in Medley. Medley stated that he did not want to waive his rights, but then he continued to express his desire to talk to the officers. The officers continued to talk to Medley, trying to determine which of Medley's statements to believe – that he wanted to talk or that he wanted to invoke his rights. Here, Detective Coerse faced the same problem once appellant interrupted him.

Although he said that he did not want to talk about "this stuff" anymore, appellant then clearly wanted to explain his defense to the detective. He interrupted the detective to claim that he was not driving the car in which the narcotics were found. At this point, appellant waived his right to remain silent, a right recently explained to him and that he recently invoked. Although the detective tried to end the interrogation, appellant wanted to discuss the crimes with which he was charged and the evidence against him.

Based on the totality of the circumstances, we find the trial court did not err in denying appellant's motion to suppress. Although appellant made a statement that invoked his right to remain silent, he then immediately contradicted his declaration by arguing for his innocence with the officer, reinitiating the discussion with the detective and waiving his right to remain silent. See Connecticut v. Barrett, 479 U.S. 523, 529 (1987) ("Miranda gives the defendant a right to choose between speech and silence, and [the defendant] chose to speak."). The detective did not violate appellant's Fifth Amendment rights. See Mitchell v. Commonwealth, 30 Va. App. 520, 527, 518 S.E.2d 330, 333 (1999).

## II. SUFFICIENCY

Appellant claims that, even if the motion to suppress was properly denied, the evidence was insufficient to convict him of possession of the cocaine found in the car. We find appellant did not preserve this argument.

While appellant made a motion to strike the evidence at the close of the Commonwealth's case, he did not renew this motion after he testified nor did he make a motion to set aside the verdict after the jury returned with its decision. Therefore, he did not preserve his sufficiency argument for appeal. See McQuinn v. Commonwealth, 20 Va. App. 753, 755-57, 460 S.E.2d 624, 625-26 (1995) (*en banc*) (concluding, "If the accused elects not to stand on his motion and presents evidence, he thereby creates a new context in which the court, if called upon to do so,

- 9 -

must judge the sufficiency of the evidence.  Thus, the original motion to strike is no longer applicable because it addresses a superseded context.").

CONCLUSION

We find the trial court did not err in denying appellant's motion to strike statements he made at the police station, and we find he did not preserve the sufficiency argument for appeal. Therefore, we affirm the possession of cocaine conviction and remand for correction of a clerical error in the final order.

<u>Affirmed and remanded.</u>

Kelsey, J., concurring.

I fully concur with Judge Beales's analysis. I write separately only to add that Dozier waived his argument (and, for the same reason, rendered any error harmless) by taking the stand at trial and then testifying about the statements he made during and after the police interview.

Miranda protects "a fundamental *trial* right." United States v. Patane, 542 U.S. 630, 641 (2004) (plurality opinion) (citations omitted, emphasis in original). As a result, the "mere failure to give Miranda warnings does not, by itself, violate a suspect's constitutional rights or even the Miranda rule." Id. "Potential violations occur, if at all, only upon the admission of unwarned statements into evidence at trial." Id. This trial right — to exclude from evidence statements obtained in violation of Miranda — can be waived like any other evidentiary objection.

Under settled principles, when a defendant "unsuccessfully objects to evidence that he considers improper and then introduces on his own behalf evidence of the same character, he waives his earlier objection to the admission of that evidence." Combs v. Norfolk & W. Ry., 256 Va. 490, 499, 507 S.E.2d 355, 360 (1998). This principle applies to criminal cases no less than civil cases. See, e.g., Saunders v. Commonwealth, 211 Va. 399, 401, 177 S.E.2d 637, 638 (1970) (where "an accused unsuccessfully objects to evidence" and then "on his own behalf introduces evidence of the same character, he thereby waives his objection"); Snead v. Commonwealth, 138 Va. 787, 801-02, 121 S.E. 82, 86 (1924) (recognizing waiver applies where the objecting party offers "on his own behalf testimony *similar to that to which the objection applies*" (emphasis added)); Snarr v. Commonwealth, 131 Va. 814, 818, 109 S.E. 590, 592 (1921) (having "fully related his recollection of all of the circumstances immediately preceding is arrest," the defendant "must be held to have waived his original objection to this testimony").[6]

---

[6] See generally Ohler v. United States, 529 U.S. 753, 755-56 (2000) ("Generally, a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted.");

- 11 -

Waiver of the challenged evidence occurs when the objecting party "has elicited evidence dealing with the same subject as part of his own case-in-chief." Pettus v. Gottfried, 269 Va. 69, 79, 606 S.E.2d 819, 825 (2005). When this occurs, an appellate court "cannot reverse for alleged error." Bynum v. Commonwealth, 28 Va. App. 451, 459, 506 S.E.2d 30, 34 (1998) (quoting Hubbard v. Commonwealth, 243 Va. 1, 9, 413 S.E.2d 875, 879 (1992)).[7] "Some courts so hold because the error is harmless, and others because the subsequent introduction of the same evidence is a waiver of the objection. Whether it be placed upon one ground or the other, the result is the same." New York Life Ins. v. Taliaferro, 95 Va. 522, 523, 28 S.E. 879, 879 (1898).

In sum, Dozier took the stand at trial, waived his Fifth Amendment right not to testify, and testified about the police interview and his later statements.[8] By doing so, Dozier waived appellate review of the trial court's denial of his pretrial suppression motion and likewise rendered harmless his claim of error on appeal. I would affirm Dozier's conviction on this ground in addition to the reasons well stated in Judge Beales's opinion.

---

Charles E. Friend, The Law of Evidence in Virginia § 8-4, at 295 (6th ed. 2003) (explaining waiver principle where "the objecting party introduces the same type of evidence").

[7] Moreover, to the extent Dozier's testimony at trial was inconsistent with his earlier voluntary statements during the police interview, his interview statements would have thereby become admissible in the Commonwealth's rebuttal case as impeachment *even if* they had been obtained without Miranda warnings. See Michigan v. Harvey, 494 U.S. 344, 350 (1990) ("We have already decided that although statements taken in violation of only the prophylactic Miranda rules may not be used in the prosecution's case in chief, they are admissible to impeach conflicting testimony by the defendant."); United States v. Havens, 446 U.S. 620, 626 (1980); Oregon v. Hass, 420 U.S. 714, 721-22 (1975); Harris v. New York, 401 U.S. 222, 225-26 (1971). "It is well established that a criminal defendant's right to testify does not include the right to commit perjury," Lachance v. Erickson, 522 U.S. 262, 266 (1998) — Miranda notwithstanding.

[8] The waiver analysis applies equally to Dozier's statements made directly to the police as well as his statements (overheard by the police) to his girlfriend. Waiver or no waiver, Dozier's incriminating statements to his girlfriend would not be governed by Miranda in any event. Neither the Fifth Amendment nor its Miranda protections apply to voluntary statements by a suspect to a private individual.