UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:    Judges O'Brien, Ortiz and Senior Judge Humphreys
Argued at Lexington, Virginia

RODNEY RAY WILLIAMS

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1562-23-3          JUDGE MARY GRACE O'BRIEN
                                                    OCTOBER 22, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Bruce D. Albertson, Judge

David B. Hargett (Hargett Law, PLC, on briefs), for appellant.

Linda R. Scott, Senior Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


A jury convicted Rodney Ray Williams of 50 counts of possessing child pornography, 1

count of distributing child pornography, and 24 counts of distributing child pornography as a second

or subsequent offense.  The court sentenced Williams to 249 years' imprisonment with 123 years

suspended.  On appeal, Williams contends that the court erred in admitting "testimony and exhibits

of the contents of [a] cell phone when the phone was not produced at trial."  He argues that the court

erred in denying his motion to set aside the jury's verdict because the absence of "the physical

phone denied the defense the ability to establish details of what was on the actual phone [and] how

it was set up."  Williams also challenges the sufficiency of the evidence to sustain his convictions.

_____

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND

On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth." *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)).

On January 27, 2020, the police executed a search warrant at Williams's home, where he lived with his wife, mother, and Derek Jackson. Williams could not locate his cell phone when the police searched the house. The police seized Jackson's cell phone, but it contained no contraband.

On December 29, 2020, Special Agent Tami Ketcham, with Homeland Security Investigations and the United States Immigration and Customs Enforcement, returned to Williams's home with a second search warrant. The warrant authorized the search of an Apple iPhone which Special Agent Ketcham seized from Williams's person.

Williams expressed concern about what the police would find on the phone. Williams held up his hands with his wrists together and said, "just take me." He also told the officers that he had an Apple phone and Jackson had a Samsung phone, and they did not share their devices.

At trial, Special Agent Ketcham testified that the phone she seized from Williams was an Apple iPhone 8. When Special Agent Ketcham was asked for the "make, model and other information" of Williams's phone, Williams objected on hearsay grounds and claimed that the phone "would be the best evidence of that information." The prosecutor responded that she would establish the chain of custody for the phone before admitting any evidence about the phone's contents, but at that point she was merely eliciting identifying information about the device. Williams argued that it was "a confrontation issue" and "the phone ought to be here." The court overruled the objection. Special Agent Ketcham explained that each cell phone has a unique International Mobile Equipment Identity (IMEI) number that is essentially "a fingerprint for the

phone." Special Agent Ketcham secured the phone in the evidence room at Homeland Security Investigations (HSI) in Harrisonburg.

On December 30, 2020, Special Agent Ketcham and Special Agent Gabriel Whittaker removed the phone from the HSI evidence room for an initial forensic evaluation. Special Agent Whittaker found child pornography on the phone. He did not alter the contents of the phone when it was in his possession and he and Special Agent Ketcham returned the phone to the HSI evidence room the same day.

During the Commonwealth's case, Williams introduced a copy of the search warrant for his phone that was executed on December 29, 2020. The warrant stated that the item to be searched was an Apple iPhone with the IMEI number ending in 8830 which was in Williams's possession. The search warrant return reflected that the police seized an Apple iPhone with model number "MQ7X2LL/A," serial number "C8PVK0R9JC6N," and an IMEI ending in 8830. Special Agent Ketcham testified that the IMEI for Williams's phone ended with the digits 8830.

Special Agent Ketcham took the phone from the HSI evidence room and gave it to Detective Randall Life of the Harrisonburg Police Department on January 5, 2021. Detective Life, an expert in digital forensics, testified that the serial number and IMEI for the phone he received from Special Agent Ketcham matched the identifying information for the phone listed on the search warrant return. With the phone in "airplane mode" and disconnected from Wi-Fi and Bluetooth, Detective Life used the passcode of 7366 to unlock it. Detective Life performed a full extraction of the data on the phone and made a forensic copy of the data. While in possession of the phone, Detective Life did not alter its contents.

Before Detective Life testified about his evaluation of the phone, Williams again objected "on confrontation" to not having the actual phone in evidence, as he did not "have a copy of the phone with the serial number on it. We've never seen that. We don't have that and that's a crucial

piece of evidence." The court overruled the objection "subject to the Commonwealth proving it up and addressing what a forensic copy is amongst other evidence in the case." The court also stated, "If the Commonwealth does not prove it up[,] I'll revisit the ruling." Williams also objected when the prosecutor asked Special Agent Ketcham whether she reviewed "IT logs and returns from Comcast, Shentel, Verizon, and KIK." He based his objection was on "confrontation" and stated that he would "like to see the phone." The court overruled the objection but told the Commonwealth that it was required to establish the chain of custody.

Detective Life found multiple images and videos of child pornography on the phone.[1] He prepared a PowerPoint containing child pornography images and videos; the images were accessible to the user because they were contained either in the photo gallery or in the messages through which they were sent to others, even if the images themselves had been deleted from the device.[2]

Detective Life determined that all the 50 images and videos of child pornography that Williams was charged with possessing were on the phone when it was seized. The 25 images and videos that Williams was charged with distributing were contained in messages in the chat application "Wickr." All the images and videos were distributed electronically from the phone to unknown recipients between December 24 and 29, 2020. The images and videos were accompanied by text messages that expressed, in graphic terms, interest and desire to have sex with children. Many of the images and videos were shared between the hours of 2:00 a.m. and 5:00 a.m. Between those hours on December 23, Williams's phone and Jackson's phone exchanged text messages about potential purchases of ceramics; during that same time Williams's phone also

---

[1] There was no dispute that the images and videos found on the phone qualified as child pornography under Code § 18.2-374.1(A).

[2] Williams did not object to Detective Life's report and exhibits concerning the 75 child pornography images and videos that he was charged with possessing and distributing.

accessed images of child pornography. Williams's phone was not "sync[ed]" to share content with any other devices or iCloud.

After the forensic examination, Special Agent Ketcham retrieved the phone from Detective Life and secured it in the HSI evidence room on January 7, 2021. The phone remained there until July 16, 2021, when Special Agent Ketcham delivered it to Detective Greg Miller of the Harrisonburg Police Department, who secured the phone in the evidence room.

Verizon Wireless records for Williams's phone, admitted without objection, showed that the phone's number was associated with the business "Rodney Williams and Associates," with Williams's home address. "Rodney Williams" was the name of the contact for Verizon. The IMEI of the phone associated with the number matched the phone seized from Williams.

According to defense witnesses, Williams and his wife had an active Airbnb business at their home, and Williams shared the passcode for his phone with guests so that they could access the sound system while using the pool.[3] In December 2020, 50 people stayed as Airbnb guests.

Williams's wife testified that he typically left his phone at the downstairs charging station when they retired to their bedroom for the night. She believed the passcode to Williams's phone was 8595 and that he had shared it with Jackson as well as Airbnb guests. She also stated that Jackson often used Williams's phone in the course of Williams's real estate business.

Jackson confirmed that he knew the passcode to Williams's phone and often used it for their real estate business. Jackson testified that the passcode to the phone was 2215, "and then after all this stuff happened" it was changed to 7585. Jackson denied downloading child pornography on the phone or possessing child pornography.

---

[3] Detective Life determined that the Sonos sound system app and the Wickr app on Williams's phone were not used at the same time.

Colin Bowie moved into Williams's home in August 2022, after Williams's arrest. Bowie stated that Williams no longer shared his phone with others as he had before his arrest.

Testifying in his own behalf, Williams explained that he said "just take me" as a "facetious" response to Special Agent Ketcham's claims that she had grounds to arrest him. Williams denied having a Wickr account or ever knowingly possessing child pornography images on his phone.

The court convicted and sentenced Williams upon all 75 guilty verdicts returned by the jury.

ANALYSIS

I.

Invoking hearsay and best evidence principles, Williams argues that the court should not have permitted the Commonwealth to elicit testimony about the phone's model, serial number, and IMEI number without the phone itself. But Williams introduced this same evidence himself in the copy of the December 2020 search warrant and return—which was admitted at Williams's request—as a defense exhibit. The return on the search warrant listed the seized phone's model, serial number, and IMEI number.

Under settled principles, when a defendant "unsuccessfully objects to evidence that he considers improper and then introduces on his own behalf evidence of the same character, he waives his earlier objection to the admission of that evidence." *Combs v. Norfolk & W. Ry. Co.*, 256 Va. 490, 499 (1998). When this occurs, the defendant "waives his objection" and an appellate court "cannot reverse for alleged error." *Bynum v. Commonwealth*, 28 Va. App. 451, 459 (1998) (quoting *Hubbard v. Commonwealth*, 243 Va. 1, 9 (1992)). "[W]hile a party can complain on appeal about his opponent's erroneously admitted evidence, he cannot complain about his own. And, when his own evidence is substantially the same as his opponent's, he can complain on appeal about neither." *Isaac v. Commonwealth*, 58 Va. App. 255, 263 (2011).

Williams himself introduced evidence of the identifying information of the seized phone, the same evidence about which he complains on appeal. By introducing the evidence, Williams waived any objection to trial testimony about the identifying elements of the phone. *See Bynum*, 28 Va. App. at 459. Thus, we do not consider this claim on appeal.

II.

Williams claims that the court erred by admitting the contents of the phone into evidence because, without the physical phone also in evidence, he was denied his Sixth Amendment right to confront the evidence against him and mount a defense. The introduction of the contents of Williams's phone without the phone itself did not present a potential constitutional confrontation claim. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The amendment "guarantees a defendant's right to confront those 'who "bear testimony"' against him." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309 (2009) (quoting *Crawford v. Washington*, 541 U.S. 36, 51 (2004)). "'Testimony,' in turn, is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *Crawford*, 541 U.S. at 51 (alteration in original) (quoting 2 No. Webster, *An American Dictionary of the English Language* (1828)). "Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Id.* at 59.

Here, Detective Life, who examined the phone, appeared at trial, testified on both direct and cross-examination about his findings, and produced documents concerning the contents of the phone. Detective Life was thus available for confrontation through cross-examination, satisfying Williams's right to confront the testimony against him about the contents of the phone.

III.

Williams challenges the sufficiency of the evidence to sustain his convictions. He claims that the Commonwealth did not prove that he knew about the contraband in his phone and failed to exclude a reasonable hypothesis of his innocence because others used or had access to his phone. Williams argues that it was "just as likely that Jackson, and not Williams, was the one responsible for accessing the contraband and sharing the contraband with others."

"In determining whether the evidence was sufficient to support a criminal conviction, the appellate court views the facts in the 'light most favorable' to the Commonwealth." *Green v. Commonwealth*, 72 Va. App. 193, 200 (2020) (quoting *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017)). "Under the governing standard, 'we review factfinding with the highest degree of appellate deference.'" *Commonwealth v. Barney*, 302 Va. 84, 96 (2023) (quoting *Bowman v. Commonwealth*, 290 Va. 492, 496 (2015)). Accordingly, "[i]n conducting [its] review, the Court defers to the [jury's] findings of fact unless they are plainly wrong or without evidence to support them." *Brewer v. Commonwealth*, 71 Va. App. 585, 591 (2020). "This deference is owed to both the [jury's] assessment of the credibility of the witnesses and the inferences to be drawn 'from basic facts to ultimate facts.'" *Eberhardt v. Commonwealth*, 74 Va. App. 23, 31 (2021) (quoting *Davis v. Commonwealth*, 65 Va. App. 485, 500 (2015)).

"If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)). "In the end, the appellate court 'ask[s] whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."'" *Eberhardt*, 74 Va. App. at 31 (alteration in original) (quoting *Davis*, 65 Va. App. at 500).

"When conducting a sufficiency review on appeal, we do not 'distinguish between direct and circumstantial evidence' because the factfinder 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'" *Barney*, 302 Va. at 98 (quoting *Moseley*, 293 Va. at 464). "Circumstantial evidence, if sufficiently convincing, is as competent and entitled to the same weight as direct testimony." *McCain v. Commonwealth*, 261 Va. 483, 493 (2001). This Court does not view circumstantial evidence in isolation. *Kelly v. Commonwealth*, 41 Va. App. 250, 259 (2003) (en banc). Rather, the "combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." *Dowden v. Commonwealth*, 260 Va. 459, 470 (2000) (quoting *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979)).

"The reasonable-hypothesis principle . . . is 'simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt.'" *Moseley*, 293 Va. at 464 (quoting *Hudson*, 265 Va. at 513). "[T]he factfinder determines which reasonable inferences should be drawn from the evidence[] and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant." *Id.* "Whether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong." *Holloway v. Commonwealth*, 57 Va. App. 658, 666 (2011) (en banc) (quoting *Emerson v. Commonwealth*, 43 Va. App. 263, 277 (2004)).

In finding Williams guilty, the jury necessarily rejected his claim that someone else was responsible for the child pornography on his phone and that he never accessed or distributed it. "The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the [factfinder]." *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017). "That responsibility lies with the [factfinder] because '[t]his [C]ourt[,] sitting as an appellate court, and knowing nothing of the

evidence or of the witness, except as it appears on the paper, . . . [is] incompetent to decide on the credibility of the testimony.'" *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011) (second, third, and fourth alterations in original) (quoting *Brown v. Commonwealth*, 29 Va. (2 Leigh) 769, 777 (1839)). And "[i]n its role of judging witness credibility, the [factfinder] is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)).

It was uncontroverted that the phone containing at least 75 child pornography images and video belonged to Williams. At trial, Williams claimed that many other people had access to and used his phone. But when initially confronted by the police, Williams expressed concern about what the officers would discover on the phone. He held out his hands and told the police to "just take" him. At that time, Williams acknowledged that he and Jackson did not share their phones with each other.

The Commonwealth proved that between December 24 and 29, images and videos of child pornography were shared from Williams's phone with others. At least some images included text message exchanges indicating that the sender and the recipient shared an interest in child pornography and in sex involving children. The distributions largely occurred between the hours of 2:00 a.m. and 5:00 a.m. On December 23, between 2:00 a.m. and 5:00 a.m., while Williams's phone and Jackson's phone exchanged text messages about potential purchases of ceramics, Williams's phone also accessed images of child pornography. We find that, when these facts are considered as a whole, a reasonable factfinder could conclude beyond a reasonable doubt that Williams knew of the child pornography on his phone, that he distributed it to others, and that he was guilty of the charged offenses.

## CONCLUSION

For these reasons, we affirm the trial court's judgment.

*Affirmed.*