COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges Beales and Raphael
Argued by videoconference


JAMES THOMAS CHARNICK
                                          MEMORANDUM OPINION* BY
v.       Record No. 1230-22-1        CHIEF JUDGE MARLA GRAFF DECKER
                                            JANUARY 16, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Christopher W. Hutton, Judge

(Joshua A. Goff; Goff Voltin, PLLC, on brief), for appellant.
Appellant submitting on brief.

Matthew J. Beyrau, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


James Thomas Charnick appeals his convictions for carjacking, use of a firearm in the

commission of a felony, and credit card theft in violation of Code §§ 18.2-53.1, -58.1, and -192.  He

contends that the trial court erred by admitting certain exhibits, finding the evidence sufficient to

convict him, and denying his motion to set aside the verdict based on his claim that the

Commonwealth withheld exculpatory evidence.  For the following reasons, we affirm the judgment.

BACKGROUND[1]

While at a park in Hampton with her four young children one afternoon in March 2020,

Alexis Marshall saw a man dressed in black and wearing a hoodie walk by.  A short time later, as

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] In accordance with familiar principles of appellate review, this Court states the facts "in
the light most favorable to" the Commonwealth, the "prevailing party" at trial, "including any
inferences the factfinder may reasonably have drawn from the facts proved."  *Blackwell v.
Commonwealth*, 73 Va. App. 30, 44 (2021) (quoting *Hannon v. Commonwealth*, 68 Va. App. 87,
92 (2017)).

she was returning to her parked car with her children, the man approached her. Marshall noted that he had numerous tattoos on his face, and she thought she had seen him previously at a nearby store that sold car tires. When she asked if he "[was] at Tire World," he responded "no." He then told her, "But you can give me those keys before I pop you." She understood his use of "pop" as "slang language" meaning "shoot."[2] Marshall did not see a gun, but she believed he had one because of both his verbal threat and the fact that his hand was in his pocket and "a point" was "showing" "like[] he had something in there." When the man repeated his threat and said he was "serious," Marshall gave him her keys. After the man got into her car and locked the doors, he told her to "get away from the car before [he] sho[]t" her. He then drove away with her phone and wallet in the car. Marshall went to a nearby house, and the police were notified of the crimes.

Detective Michael Snelgrow of the Hampton Police Division investigated the offenses. Marshall described the offender's facial tattoos and clothing to the detective. She said that he had "a tattoo of a cross" beneath his right eye. Snelgrow's notes stated that Marshall also said the man had sideburns, but at trial she denied making such a statement.

As part of the investigation, on the day of the incident, Detective Snelgrow showed Marshall 5,467 mugshots.[3] Marshall did not identify the appellant as the carjacker from the mugshots because, according to her, none of the men pictured had similar facial tattoos.[4] She testified that the

---

[2] The trial court later specifically found that "pop" has been "known" for "many decades" as the "equivalent of shoot."

[3] The prosecutor represented that the mugshots were shown to the victim in a "digital file" format. No further explanation or evidence on this particular point was provided.

[4] After the appellant's arrest, Marshall was not asked to view another photo array specifically including his photo. According to Snelgrow, this was so because the appellant had "tattoos all over [his] face" and the police data system did not contain enough photographs of persons with a similar number of facial tattoos to permit them to assemble an array. Also, no "show-up identification" was conducted.

appellant's photo "wasn't in there," and the detective did not recall if he subsequently verified whether the photo had been included.[5]

Marshall's car was equipped with a GPS tracking device. The day after the theft, Hampton police tracked the car to a laundromat in Norfolk and notified Norfolk police. Arriving at the site about 9:30 a.m. that morning, Officer Joshua Irizarry of the Norfolk Police Department saw three people in the car. As he watched them, the driver and one of the passengers got out of the car and switched seats. Officer Irizarry parked behind the car to prevent it from leaving, and officers detained the occupants. The appellant was the person who had moved out of the driver's seat. He was dressed entirely in black and had numerous tattoos on his face. One of the passengers was Dana Bacon, who was questioned and released. The third man in the car was held on an unrelated outstanding warrant.

After Detective Snelgrow advised the appellant of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), he denied being near the Hampton park the previous day and committing the carjacking. He claimed that Bacon had given him a ride and denied switching seats with Bacon. The appellant acknowledged that his uncle lived near Tire World and that he had used his uncle's address several times in the past and slept there on occasion.

Law enforcement officers searched Marshall's car before returning it to her. Although her wallet was still in the car, "everything was scattered out of it," and her Wells Fargo and SunTrust credit cards were missing. Her phone also was not in the car.

---

[5] The record is disappointingly sparse regarding the additional circumstances surrounding Marshall's viewing of the photographs. The prosecutor represented to the trial court that "the entire file" of police photos is not "offered to witnesses" and, instead, that "search parameters" were used that produced "the photograph yield of the digital file" that Marshall viewed. The prosecutor further offered that the detective "did not notate the search parameters" and was therefore "unable to replicate the search." The record, however, contains no evidence on any of these points.

Marshall testified that her Wells Fargo credit card account emailed her receipts when the card was used. She explained that after the carjacking and robbery, she received three emailed receipts for charges she had not made. Additional evidence established that those charges were made several hours after the carjacking at a 7-Eleven store in Norfolk. Hampton Police Detective Bryce Kiser obtained surveillance footage from the store for that time period. It showed the appellant getting out of a white sedan "matching" Marshall's vehicle and entering the store. He was dressed entirely in black and used a red credit card to purchase several items.[6] Detective Kiser recognized the appellant by the "very distinct" tattoos on his face, which the detective had observed previously. The Commonwealth introduced a collection of four photographs with timestamps taken from the 7-Eleven security video, which Detective Kiser had prepared. The appellant objected to the introduction of the photos, arguing that "the relevancy" of the photographs "ha[d not] been established." The court admitted them as an exhibit.

The Commonwealth also presented a credit card transaction log from the store. Christian Ebido, an assistant manager at the 7-Eleven, testified that he had access to the credit card transaction logs as part of his job and they were used to provide customer receipts when needed. He explained that Detective Kiser gave him a credit card number that he used to search the store's records. Ebido found a match for the card number and ran a report based on that number. He verified that the report was accurate. Three transactions on the log conducted within the same six-minute period involved the use of one or more credit cards ending in the same four digits. The times of those transactions corresponded with the timestamped photographs of the appellant from the surveillance videos. The appellant objected to the admission of the credit card transaction log on multiple grounds. He argued that the evidence was not relevant, was inadmissible hearsay, had not been

---

[6] The appellant admitted during his testimony that the card was also used to purchase gasoline at the pump, although he claimed that Bacon was the person who used it for that purpose.

authenticated, and lacked a "proper foundation" for admission. The court overruled the objection and admitted the log, stating that Ebido had "clearly identified" the evidence and its weight would be determined later.

The appellant testified in his defense. He denied taking Marshall's car. He said that on the afternoon of the carjacking, he was in Norfolk with "a female" he was "dealing with" and Bacon had picked him up later that evening, at about 9:30 or 10:00 p.m. The appellant admitted purchasing items at the 7-Eleven on the night of the carjacking but said that Bacon had given him the credit card and asked him to go into the store to do so. The appellant denied looking at the card when he used it and said he did not know that it was stolen. He further testified he "had no knowledge of what was going on" when they went to pick up a friend the next morning and were stopped by the police. The appellant denied having a cross tattoo. Instead, he said he had "a teardrop and an R and a 90" under his right eye and "a teardrop" under his left eye. He complied with the prosecutor's request to show each side of his face to the court. The appellant admitted on cross-examination that he did not recall that either of the other two occupants of the stolen car at the time of his arrest had "face tattoos."

The trial court, as the trier of fact, found that the facts in the case were "not coincidental." It specifically determined that the evidence as a whole showed the appellant was the person who stole the victim's car and credit cards after threatening to shoot her. As a result, the court concluded that the appellant was guilty of the charged offenses.

Before sentencing, the appellant made motions for a new trial and to set aside the verdict. Defense counsel asserted that the evidence was insufficient to convict the appellant for a variety of reasons. He further alleged that because Marshall had not identified anyone from the mugshots she was shown after the offense, the Commonwealth had violated *Brady v. Maryland*, 373 U.S. 83 (1963), by not disclosing whether the appellant's photo had been included. The prosecutor

explained that the detective had prepared the photo array using a computer system but did not note the search parameters and therefore was unable to recreate the array. The trial court ruled that no *Brady* violation had been established because "too much of what [the appellant] argue[d was] entirely speculative." The court denied the appellant's motions.

The appellant was sentenced to a prison term of twenty-three years and six months with seven years suspended.

ANALYSIS

The appellant asserts that the trial court erred by admitting three exhibits that showed he had been at the 7-Eleven, concluding the evidence was sufficient to convict him, and denying his motion to set aside the verdict based on his *Brady* claim that the Commonwealth withheld exculpatory evidence.

I. Admission of Commonwealth's Exhibits

The appellant suggests that the trial court erred by admitting Commonwealth's Exhibits 1, 2, and 3. Exhibit 1 consists of the four photographs of the appellant taken from the 7-Eleven surveillance video. Exhibits 2 and 3 comprise two pages of specific entries from the store's credit card transaction log. The appellant argues that all three exhibits were not relevant. He also challenges the admission of the credit card transaction log pages on authentication and hearsay grounds.

We decline to address the merits of this collective assignment of error because the appellant waived his objections to the evidence by eliciting substantially the same evidence during his own case. *See, e.g.*, *Commonwealth v. Swann*, 290 Va. 194, 196 (2015) ("The doctrine of judicial restraint dictates that we decide cases '"on the best and narrowest grounds available."'" (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010))).

"When 'an accused unsuccessfully objects to evidence [that] he considers improper and then on his own behalf introduces evidence of the same character, he thereby waives his objection, and [the appellate court] cannot reverse for the alleged error.'" *Stevens v. Commonwealth*, 72 Va. App. 546, 557 (2020)) (second alteration in original) (quoting *Hubbard v. Commonwealth*, 243 Va. 1, 9 (1992)). This waiver principle applies to "exactly the same evidence," "evidence dealing 'with the same subject,'" "evidence fairly considered to be 'of the same character,'" and "evidence 'similar to that to which the objection applies.'" *Id.* (quoting *Isaac v. Commonwealth*, 58 Va. App. 255, 264 (2011)). The security video photos and the credit card transaction log tended to establish that the appellant had arrived at the 7-Eleven in Marshall's stolen car and used her credit card at the store. The appellant objected to the exhibits, but then he testified in his own case that he had entered the store and bought items with a card that did not belong to him, claiming he did not know the card was stolen. A defendant waives his previous objection when he offers the same or similar evidence "to explain it away or to offer a more favorable interpretation." *Isaac*, 58 Va. App. at 261-62 (clarifying that although "[a]n exception to the same-evidence [waiver] principle exists for evidence [merely] elicited 'during cross-examination of a witness or in rebuttal testimony,'" "a criminal defendant's *case in chief* . . . , by its very nature, seeks to [counter] . . . the Commonwealth's evidence" and does not fall within the exception (quoting *Zektaw v. Commonwealth*, 278 Va. 127, 134 (2009))). The appellant's admissions that he was present at the store in Marshall's car and used the credit card represent even stronger evidence than the photos and the transaction log.

As a result of his testimony, the appellant waived his objections to Exhibits 1, 2, and 3 by eliciting substantially the same evidence during his own case. *See Bynum v. Commonwealth*, 28 Va. App. 451, 459 (1998) (waiver due to the defendant's testimony); *see also Stevens*, 72

Va. App. at 558 (waiver due to a defense expert's testimony); *Isaac*, 58 Va. App. at 260, 263-64 (waiver due to a defense exhibit).

Accordingly, we do not consider the appellant's challenge to the admissibility of these exhibits on the merits.

## II. Sufficiency of the Evidence

The appellant argues that the evidence is insufficient to support his convictions.

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Shahan v. Commonwealth*, 76 Va. App. 246, 258 (2022) (quoting *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021)). The question on appeal is "whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Rock v. Commonwealth*, 76 Va. App. 419, 434 (2023) (quoting *Nelson v. Commonwealth*, 73 Va. App. 617, 622 (2021)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Lucas v. Commonwealth*, 75 Va. App. 334, 342 (2022) (quoting *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020)).

The appellant challenges the sufficiency of the evidence on three grounds. First, he argues that Marshall erroneously identified him as the criminal actor. Second, he contends that the evidence was insufficient to support his conviction for credit card theft because it did not prove the account number on the card used at the 7-Eleven matched the number on either of Marshall's stolen cards. Third, he suggests that the evidence failed to prove he used a firearm in the commission of the carjacking.

A.  Identity

The appellant contends that Marshall erroneously identified him as the carjacker, thereby calling into question his guilt of all three offenses.  He suggests that the evidence supported the reasonable inference that one of the other people in the car with him at the time of his arrest committed the carjacking.

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt."  *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)).  On appeal, we review the trier of fact's determination regarding the identity of the criminal actor in the context of "the totality of the circumstances."  *Brown v. Commonwealth*, 37 Va. App. 507, 523 (2002) (quoting *Satcher v. Commonwealth*, 244 Va. 220, 250 (1992)).  The factors set forth in *Neil v. Biggers*, 409 U.S. 188 (1972), are instructive in determining "whether the identification evidence is sufficient, standing alone or in combination with other evidence, to prove beyond a reasonable doubt" the identity of the person who committed the crimes.  *Brown*, 37 Va. App. at 522.  Factors for consideration in "evaluating the likelihood" that the witness misidentified the defendant include the witness's "opportunity . . . to view the criminal at the time of the crime," her "degree of attention," the accuracy of any "prior description of the criminal" by the witness, the "level of certainty" she demonstrated at the time of "confrontation," and "the length of time between the crime and the confrontation."  *Biggers*, 409 U.S. at 199-200.

Here, Marshall testified that she first saw the appellant when he walked by her while she was at the park with her four children.  This viewing occurred prior to any confrontation.  At that time, she thought she recognized him as someone she had previously seen at Tire World.[7]  Then,

_____

[7] Although the appellant told her she was mistaken, evidence at trial established that his uncle lived near Tire World and he had used his uncle's address on prior occasions.

after the appellant approached Marshall and demanded her car keys, she observed him at close range for three to four minutes before he drove away in her car. She noticed his tattoos and other facial details, his skin color, his "general weight," and his clothing. Marshall described him to the police shortly after reporting the carjacking.[8] She did not identify a suspect from the digital photo array she was shown because none of the men pictured had similar facial tattoos. Moreover, the record does not indicate whether the appellant's photo was included in the array. Significantly, Marshall positively identified the appellant both at the preliminary hearing and at trial as her assailant. She did not waver with regard to her in-court identification. The totality of these circumstances were sufficient to prove that the appellant was the criminal actor. *See Cuffee*, 61 Va. App. at 364-66.

As to the appellant's suggested hypothesis of innocence that one of the other occupants of the car was the culprit, "[w]hether an alternate hypothesis of innocence is reasonable is a question of fact." *Maust v. Commonwealth*, 77 Va. App. 687, 700 (2003) (en banc) (alteration in original) (quoting *Wood v. Commonwealth*, 57 Va. App. 286, 306 (2010)). "As long as 'a rational fact[]finder could reasonably reject [the appellant's] theories in his defense and find that the totality of the suspicious circumstances proved [his guilt] beyond a reasonable doubt,' the appellate court must affirm the conviction." *Id.* at 700-01 (second and third alterations in original) (quoting *Park v. Commonwealth*, 74 Va. App. 635, 654 (2022)). "[M]erely because [a] defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded." *Edwards v.*

---

[8] The appellant argues that Marshall misidentified him because she told Detective Snelgrow that he had a tattoo of a cross under his right eye and sideburns. The appellant described his tattoos as "a teardrop and an R and a 90," and he showed both sides of his face to the court. Marshall testified that, contrary to the detective's notes, she had not said that the carjacker had sideburns. The trial court had the opportunity to see the tattoos. It noted that the tattoos on the sides of the appellant's face from his ear to his chin were "not inconsistent with sideburns."

*Commonwealth*, 68 Va. App. 284, 301 (2017) (second alteration in original) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004)).

It is well established that in considering a sufficiency challenge, "[c]ircumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011) (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)). "[W]hile no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

Here, the appellant was found driving Marshall's car in Norfolk the morning after it had been stolen. Bacon and another man were in the car with him. The appellant's testimony implicated Bacon in the offenses, but no other evidence connected Bacon to the crimes. In fact, on cross-examination Marshall said she did not recognize a photo of Bacon and denied that he was the man who stole her car. Instead, Marshall identified the appellant as the person who took her car after threatening to shoot her if she did not give him her car keys. Her wallet containing her Wells Fargo credit card was in the vehicle when he took it. Marshall's eyewitness identification therefore provided direct evidence of the appellant's guilt of all three offenses. Further direct and circumstantial evidence corroborated her identification and provided additional details supporting his guilt. Just hours after the carjacking, Marshall received emails from Wells Fargo indicating that three charges she had not authorized had been made on her credit card. The car's GPS placed it at a 7-Eleven in Norfolk. The appellant admitted using a credit card that did not belong to him at the 7-Eleven, and his admission that he used a card there was corroborated by the store's surveillance

video and credit card transaction log. The trier of fact rejected the appellant's hypothesis of innocence based on this extensive credible evidence to the contrary.

The totality of the evidence supports the trial court's rejection of the appellant's hypothesis of innocence and its conclusion that he was the person who committed the carjacking and related offenses. *See Robinson v. Commonwealth*, 70 Va. App. 509, 513 (2019) (en banc).

## B. Credit Card Theft

The appellant challenges his conviction for credit card theft on the ground that no evidence proved that the account number on the card used at the 7-Eleven matched the number on either of Marshall's cards.

Code § 18.2-192(1)(a) provides in pertinent part that a person is guilty of credit card theft when he "takes, obtains or withholds a credit card . . . from the person, possession, custody or control of another without the cardholder's consent." The offense of credit card theft under this subsection of the statute, therefore, is complete *when the card is taken*. *See Scott v. Commonwealth*, 292 Va. 380, 384-85 (2016) (stating that the first crime defined in the statute is committed when a credit card is taken without permission and that proof of specific intent to use the stolen card is required only for the second crime defined in it). Marshall's Wells Fargo and SunTrust credit cards were in her car when the appellant carjacked it. She testified that she received emails from Wells Fargo the evening after the cards were stolen indicating that three unauthorized charges had been made on the stolen card. Credit card records and surveillance video from a Norfolk 7-Eleven established that the appellant was the person who used the card there during that time frame. The appellant admitted using a card at the 7-Eleven that did not belong to him but claimed he did not know the card was stolen. Viewing the record in the light most favorable to the Commonwealth, the evidence was sufficient to convict the appellant of credit card theft.

- 12 -

Acknowledging that a person's unexplained possession of a stolen item creates the inference that the person committed larceny, the appellant argues that he did not have exclusive possession of the stolen items because two other men were in the car with him and the evidence did not prove that he consciously asserted a possessory interest in the credit card. Again, his assertion that the evidence did not exclude the reasonable hypothesis of innocence that someone else committed the carjacking and simultaneous theft of the credit card requires the acceptance of his version of events instead of the Commonwealth's evidence. According to him, he was in Norfolk when Bacon picked him up in Marshall's car between about 9:30 and 10:00 p.m. on the evening of the carjacking. He further suggests that he purchased items at the 7-Eleven with the credit card Bacon gave him, not knowing it was stolen. The trial court, sitting as the fact finder, was "free to believe or disbelieve, in whole or in part, the testimony of any witness," including the appellant. *See Rams v. Commonwealth*, 70 Va. App. 12, 38 (2019). And in rejecting the appellant's "self-serving testimony," the court was entitled to conclude that he was "lying to conceal his guilt." *See Maust*, 77 Va. App. at 703 (quoting *Speller v. Commonwealth*, 69 Va. App. 378, 388 (2018)).

For these reasons, the evidence was sufficient to support the appellant's conviction for credit card theft.

### C. Firearm Offense

The appellant challenges his conviction for using a firearm in the commission of the carjacking on the ground that no evidence proves he used an actual firearm or threatened to do so.

Code § 18.2-53.1 provides that it is "unlawful . . . to use or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit . . . [a] carjacking." The intent of the statute is not only to "prevent[] actual physical injury or death" but also to "discourage criminal conduct that produces fear of physical

harm." *Holloman v. Commonwealth*, 221 Va. 196, 198 (1980). The definition of firearm under that statute receives "a '*broad* construction' and includes any instrument that 'gives the *appearance* of being a firearm.'" *Startin v. Commonwealth*, 281 Va. 374, 382 (2011) (quoting *Armstrong v. Commonwealth*, 263 Va. 573, 582-83 (2002) (emphasis added)). "Notably," the statute "'is written in the disjunctive,'" proscribing either "'the display of a firearm in a threatening manner'" or "'the actual use of a firearm.'" *Dezfuli v. Commonwealth*, 58 Va. App. 1, 9 (2011) (quoting *Rose v. Commonwealth*, 53 Va. App. 505, 513-14 (2009)). Consequently, it is well established that the victim need not see a gun and a gun need not be recovered. *Powell v. Commonwealth*, 268 Va. 233, 237 (2004), *cited with approval in Commonwealth v. Barney*, ___ Va. ___, ___ (Mar. 16, 2023). Further, the defendant's possession of a weapon may be proved using circumstantial evidence as long as the evidence as a whole is sufficiently convincing to exclude all reasonable hypotheses of innocence. *McBride v. Commonwealth*, 24 Va. App. 603, 606-08 (1997) (en banc).

In this case, the appellant twice told the victim to give her keys to him before he "pop[ped]" her, which she understood as a threat to shoot her. He added that he was "serious." She believed he had a gun and therefore also the ability to carry out his threat. This was so because in addition to the threats, his hand was in his pocket and the outline of "a point" was "showing" through the fabric "like[] he had something in there." Then, he specifically told her to get away from the car before he shot her, making more explicit his earlier threat to "pop" her. Although the victim never saw a gun and the appellant did not have one in his possession when he was arrested on the day following the carjacking, the appellant's behavior—including his specific threats to shoot her if she failed to give up her keys or interfered with his departure, as well as the visible "point" pushing out the fabric of the pocket—was sufficient to prove that he used a firearm within the meaning of Code § 18.2-53.1.

The appellant relies on *Yarborough v. Commonwealth*, 247 Va. 215 (1994), in which the Supreme Court of Virginia held the evidence was insufficient to prove the defendant used a firearm within the meaning of Code § 18.2-53.1. In *Yarborough*, the robber said, "This is a stickup," and demanded the victim's money, but he did not specifically claim to have a gun or threaten to use it. *See McBride*, 24 Va. App. at 606-07 (analyzing *Yarborough*). The victim saw "something" protruding from the robber's jacket, but she did not testify that he manipulated, touched, or even referenced the item during the robbery. *Yarborough*, 247 Va. at 217. When the police apprehended Yarborough fifteen minutes later, he had only an unopened can of beer in his pocket. *Id.* No firearm or item that had the appearance of a firearm was found on his person or in a search of the area. *Id.* On those facts, the Supreme Court reversed Yarborough's conviction for using a firearm in violation of Code § 18.2-53.1 because the evidence "create[d] merely a suspicion of guilt." *Id.* at 218. The Court held it was insufficient to prove that he used a firearm or another item that had the appearance of a firearm in violation of the statute. *Id.* at 218-19.

In the more recent case of *Commonwealth v. Barney*, the Supreme Court clarified *Yarborough*, explicitly observing it has never held "that a criminal could escape liability for unlawfully using a firearm by the simple expedient of concealing it." ___ Va. at ___. Instead, the Court emphasized that the circumstantial evidence in *Barney* proved the defendant used a gun because she told the victim to "cooperate if she 'want[ed] to live'" and did so "while pointing at [the victim] what looked like the barrel of a handgun" beneath the fabric of her pocket. *Id.* at ___. Similarly in the present case, the appellant specifically threatened to both "pop" and "shoot" the victim. She also saw a point resembling the barrel of a gun protruding from beneath the fabric of the pocket in which the appellant held his hand. *See also Powell*, 268 Va. at 235, 237 (affirming a conviction under Code § 18.2-53.1 where the robber said he had a gun and threatened to hurt the victims but they did not see a gun or the outline of one and no gun was recovered when the

robber was arrested shortly afterward). Therefore, the evidence supported the trial court's finding that the appellant used a firearm as required for a conviction under Code § 18.2-53.1.

### III. Alleged Violation of *Brady v. Maryland*

The appellant argues that the trial court erred by denying his motion to set aside the verdict based on his *Brady* claim. Specifically, he contends that the trial court erred in not concluding that the Commonwealth violated *Brady* by failing to disclose two things in discovery—whether his photo was included in the mugshots that Marshall viewed shortly after the carjacking and, if so, whether she was unable to identify his photo at the time.

When considering an alleged constitutional violation of *Brady* on appeal, "[w]e review the trial court's findings of historical fact only for 'clear error,' but we review de novo the trial court's application of defined legal standards to the particular facts of a case." *Castillo v. Commonwealth*, 70 Va. App. 394, 466 (2019) (quoting *Doss v. Commonwealth*, 59 Va. App. 435, 455 (2012)).

A *Brady* violation has three components. *Mercer v. Commonwealth*, 66 Va. App. 139, 146 (2016). First, the evidence not disclosed "must be favorable to the accused, either because it is exculpatory[] or because it impeaches a witness regarding a material fact." *Id.* Second, the evidence "must have been suppressed by the [Commonwealth], either willfully or inadvertently, thereby denying [the] defendant its use at trial." *Id.* Third, the nondisclosure must have prejudiced the defendant. *Id.* To prevail on a *Brady* claim, a defendant must establish each of these components. *See Commonwealth v. Tuma*, 285 Va. 629, 635 (2013). Consequently, a failure to establish any one of them requires a denial of the claim. *See id.*

The appellant's argument fails because, even if he was entitled to the allegedly favorable information and did not receive it in time to use it at trial, he has not established prejudice.[9] With regard to the required showing of prejudice, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Hicks v. Dir., Dep't of Corr.*, 289 Va. 288, 299 (2015) (quoting *Workman v. Commonwealth*, 272 Va. 633, 645 (2006)). The appellant has not established prejudice because he has not shown that the absence of the alleged favorable evidence "undermine[d] confidence in the verdict." *Strickler v. Greene*, 527 U.S. 263, 290 (1999) (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)); *see Garnett v. Commonwealth*, 275 Va. 397, 406-10, 416 (2008), *aff'g* 49 Va. App. 524, 534-36 (2007) (en banc).

The linchpin in determining prejudice is whether the absent evidence was "material." *Hicks*, 289 Va. at 299. Evidence is "material" under *Brady* if "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Tuma*, 285 Va. at 634-35 (quoting *Smith v. Cain*, 565 U.S. 73, 75 (2012)). A reasonable probability does not mean that "the defendant would more likely than not have received a different verdict with the evidence," only that the likelihood of a different result is great enough to "'undermine[] confidence in the outcome of the trial.'" *Kyles*, 514 U.S. at 434 (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)). "The mere possibility that an item of undisclosed information might have helped the defense[] or . . . affected the outcome of the

---

[9] In light of this Court's duty "to decide cases 'on the best and narrowest ground available,' we offer no opinion on" the other two components of the *Brady* analysis because "[t]he absence of prejudice, by itself, defeats [the appellant's] claim and renders all other issues analytically superfluous." *Deville v. Commonwealth*, 47 Va. App. 754, 758 (2006) (citation omitted) (quoting *Logan v. Commonwealth*, 47 Va. App. 168, 171 n.3 (2005) (en banc)).

trial[] does not establish 'materiality' in the constitutional sense." *Johnson v. Commonwealth*, 53 Va. App. 79, 106 (2008) (quoting *United States v. Agurs*, 427 U.S. 97, 109-10 (1976)).

The evidence at issue here was not material. Marshall positively identified the appellant as her assailant at trial.[10] The appellant also was identified by law enforcement officers who investigated the case. Police found him in Marshall's car in Norfolk the day after it was carjacked, and he admitted at trial that he used a credit card at the 7-Eleven that did not belong to him. His presence at the store was corroborated by the surveillance video photographs and the credit card transaction log. The appellant simply has not demonstrated that he was denied a fair trial or that the result would likely have been different if the purported exculpatory evidence had been disclosed.[11] *See Hicks*, 289 Va. at 300-01 (rejecting the appellant's *Brady* claim because the alleged undisclosed third-party statement, although potentially exculpatory, was inconsistent with both the forensic evidence and the appellant's confession, and therefore "could not reasonably be taken" as undermining confidence in the verdict).

---

[10] The appellant knew at trial that Marshall had not identified anyone from the photo array and that the detective did not recall whether the appellant's photo had been included. *See Tuma*, 285 Va. at 635-37 (holding the Commonwealth did not violate *Brady* where the defense received the material in time to use it at trial). Defense counsel cross-examined Marshall about discrepancies in her initial description of the carjacker. He also questioned her ability to identify him at the preliminary hearing, for which he appeared by video, and at trial, where he wore a mask. She remained positive that the appellant was the carjacker. *See Townes v. Commonwealth*, 234 Va. 307, 314, 324 (1987) (rejecting a defendant's *Brady* claim where he learned about the information several days before trial and cross-examined the witness about it).

[11] The appellant presents this assignment of error only in the context of the *Brady* test, which requires proof of prejudice. *See Mercer*, 66 Va. App. at 146. He does not contend that law enforcement's failure to preserve the parameters of the search that produced the mugshots viewed by the victim violated his rights in any other way. *See* Rule 5A:20(e). *See generally Arizona v. Youngblood*, 488 U.S. 51, 56-58 (1988) (holding that the prosecution's failure to preserve exculpatory evidence violates due process if the police acted in bad faith); *Gagelonia v. Commonwealth*, 52 Va. App. 99, 116-17 (2008) (holding that the defendant could not establish evidence was exculpatory under *Brady* because Virginia's "missing evidence inference" does not apply in criminal cases). As a result, we do not consider whether some other legal theory might have provided him with a remedy.

Given these facts and circumstances, the trial court did not err in denying the appellant's motion to set aside the verdict based upon an alleged *Brady* violation.

CONCLUSION

For the foregoing reasons, we hold that the appellant waived his ability to contest the admission of the challenged exhibits. We further determine that the trial court did not err by concluding that the evidence was sufficient to convict him and denying his motion to set aside the verdict based on his claim that the Commonwealth withheld exculpatory evidence. As a result, the trial court's judgment is affirmed.

*Affirmed.*